IN THE UNITED STATE DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FUNNY SOUL LLC,<br><br>       Plaintiff,<br><br>  v.<br><br>INDIVIDUALS, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS ON SCHEDULE "A,"<br><br>       Defendants. | Case No. 24-cv-01372 |

**COMPLAINT**

Plaintiff [REDACTED] ("Plaintiff" or "[REDACTED]"), by and through its counsel, hereby brings the present action against the individuals, partnerships and/or unincorporated associations identified on Schedule A, attached hereto (collectively, "Defendants"), and alleges as follows:

**I. JURISDICTION AND VENUE**

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, et seq., 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive e-commerce stores[1] operating under the seller aliases identified in

---

[1] The e-commerce store URLs are listed on Schedule A hereto under the Online Marketplaces and Domain Names.

Schedule A attached hereto (the "Seller Aliases"). Specifically, Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offering shipping to the United States, including Illinois, accepting payment in U.S. dollars and/or funds from U.S. bank accounts, and, on information and belief, selling products using infringing and counterfeit versions of Plaintiff's federally registered trademark to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois.

## II. INTRODUCTION

3. This action has been filed by [REDACTED] to combat e-commerce store operators who trade upon [REDACTED]'s reputation and goodwill by offering for sale and/or selling unauthorized and unlicensed products, mainly including [REDACTED], using infringing and counterfeit versions of [REDACTED]'s federally registered trademark (the "Counterfeit Products"). Defendants create e-commerce stores operating under one or more Seller Aliases that are advertising, offering for sale, and selling Counterfeit Products to unknowing consumers. E-commerce stores operating under the Seller Aliases share unique identifiers, establishing a logical relationship between them and the Defendants' counterfeiting operation that arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their counterfeiting operation. [REDACTED] is forced to file this action to combat Defendants' counterfeiting of its federally registered trademark, as well as to protect unknowing consumers from purchasing Counterfeit Products over the Internet. [REDACTED] has been and continues to be irreparably damaged through consumer confusion,

dilution, and tarnishment of its valuable trademark as a result of Defendants' actions and seeks injunctive and monetary relief.

## III. THE PARTIES

4.     Plaintiff [REDACTED] is a [REDACTED] limited liability corporation having its principal place of business at [REDACTED].

5.     Plaintiff was assigned and currently owns United States trademark [REDACTED] (Reg. No. [REDACTED]) ("Plaintiff's Mark"), and Plaintiff's Mark has been continuously used in commerce since registration. A true and correct copy of Plaintiff's Mark Certificate of Registration and Assignment is attached as **Exhibit A**.

6.     Plaintiff is well-known throughout the United States and elsewhere as a source of high-quality [REDACTED]. Plaintiff Products are distributed and sold through authorized online retail platforms, physical stores, boutique department stores and other forms.

7.     As a result of its long-standing use, Plaintiff owns common law trademark rights in its [REDACTED] trademark. Plaintiff's Mark is also registered with the United States Patent and Trademark Office. Plaintiff Products typically include at least Plaintiff's Mark. Plaintiff uses its trademark in connection with the marketing of Plaintiff Products.

8.     Plaintiff's Mark registration information is listed below:

| Registration Number | Trademark | Goods and Services |
|---|---|---|
| [REDACTED] | [REDACTED] | [REDACTED] |

9. The above U.S. registration for the Plaintiff's Mark is valid, subsisting, and in full force and effect. The registration for Plaintiff's Mark constitutes *prima facie* evidence of its validity and of Plaintiff's exclusive right to use Plaintiff's Mark pursuant to 15 U.S.C. § 1057(b). Plaintiff's Mark has been used exclusively and continuously by Plaintiff for a long duration, and has never been abandoned. Plaintiff's Mark is distinctive and identifies merchandise as goods from Plaintiff.

10. Plaintiff's Mark is distinctive when applied to the Plaintiff's Products, signifying to the purchaser that the products come from Plaintiff and are manufactured to Plaintiff's quality standards. Plaintiff has ensured that products bearing Plaintiff's Mark are manufactured to the highest quality standards.

11. Plaintiff's Mark been continuously used and never abandoned. The innovative marketing and product designs of Plaintiff's Products have enabled the Plaintiff brand to achieve widespread recognition. The widespread recognition, outstanding reputation, and significant goodwill associated with the Plaintiff brand have made Plaintiff's Mark a valuable asset of Plaintiff.

12. Plaintiff has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting Plaintiff's Mark. As a result, products bearing Plaintiff's Mark are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from Plaintiff. Plaintiff's Mark has achieved tremendous recognition which has only added to the distinctiveness of Plaintiff's Mark. As such, the goodwill associated with Plaintiff's Mark is of incalculable and inestimable value to Plaintiff.

13. Plaintiff Products are distributed and sold to consumers through online retail platforms, physical stores, boutique department stores and other forms. Sales of Plaintiff Products

via the Plaintiff's website are significant. Plaintiff's website features proprietary content, images, and designs exclusive to Plaintiff.

14. Defendants are individuals and business entities of unknown makeup who own and/or operate one or more of the e-commerce stores under at least the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to Plaintiff. On information and belief, Defendants reside and/or operate in the People's Republic of China or other foreign jurisdictions with lax trademark enforcement systems, or redistribute products from the same or similar sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

15. On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Plaintiff to learn Defendants' true identities and the exact interworking of their counterfeit network. If Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

## IV. DEFENDANTS' UNLAWFUL CONDUCT

16. According to FY 2021 Intellectual Property Right Seizure Statistics report by U.S. Customs and Border Protection ("CBP"), 51% of the total number of seizure lines originated from mainland China and Hong Kong. **Exhibit B**, FY 2021 Intellectual Property Right Seizure Statistics report.

17. Third party online platforms do not adequately subject new sellers to verification and confirmation of their identities, allowing infringers to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." **Exhibit C**, Daniel C.K. Chow,

*Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020). "At least some e-commerce platforms, little identifying information is necessary for [an infringer] to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary." **Exhibit D**, *Combating Trafficking in Counterfeit and Pirated Goods* prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans. Because these online platforms generally do not require a seller to identify the underlying business entity, infringers can have many different profiles that can appear unrelated even though they are commonly owned and operated. *Id.* at 39.

18. Plaintiff's success has resulted in significant counterfeiting of Plaintiff's Mark. Recently, Plaintiff has identified many fully interactive, e-commerce stores offering Counterfeit Products on online marketplace platforms such as Amazon, eBay, AliExpress, Alibaba, Wish.com, Walmart, Etsy, DHgate, and Temu, including the e-commerce stores operating under the Seller Aliases. The Seller Aliases target consumers in this Judicial District and throughout the United States.

19. Third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to use false or inaccurate information when registering. Upon information and belief, Defendants have engaged in providing false or inaccurate information upon registered their respective Domain Names.

20. In addition to operating under multiple fictitious names, Defendants in this case and defendants in other online counterfeiting cases use a variety of other methods to evade enforcement efforts including simply registering new online marketplace accounts once they receive notice of a lawsuit and operating multiple credit card merchant accounts to evade collection efforts by

Plaintiff armed with enforceable judgments. Upon information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their online money accounts to off-shore bank accounts outside the jurisdiction of this Court.

21.     Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offering shipping to the United States, including Illinois, accepting payment in U.S. dollars and/or funds from U.S. bank accounts, and, on information and belief, selling Counterfeit Products to residents of Illinois.

22.     Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases look sophisticated and accept payment in U.S. dollars and/or funds from U.S. bank accounts via credit cards, Alipay, Amazon Pay, and/or PayPal. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer.

23.     Plaintiff has not licensed or authorized Defendants to use Plaintiff's Mark, and none of the Defendants are authorized retailers of genuine Plaintiff Products.

24.     Defendants' use of Plaintiff's Mark in connection with the advertising, distribution, offering for sale, and sale of Counterfeit Products, including the sale of Counterfeit Products into Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

## COUNT I

## **TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)**

25. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

26. This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered [REDACTED] trademark in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. Plaintiff's Mark is distinctive. Consumers have come to expect the highest quality from Plaintiff's products offered, sold, or marketed under Plaintiff's Mark.

27. Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of Plaintiff's Mark without Plaintiff's permission.

28. Plaintiff is the exclusive owner of Plaintiff's Mark. The United States Registration for Plaintiff's Mark is in full force and effect. On information and belief, Defendants have knowledge of Plaintiff's rights in Plaintiff's Mark and are willfully infringing and intentionally using counterfeits of Plaintiff's Mark. Defendants' willful, intentional, and unauthorized use of Plaintiff's Mark is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Counterfeit Products among the general public.

29. Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

30. Plaintiff has no adequate remedy at law, and if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill associated with Plaintiff's Mark.

31. The injuries and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit Products.

## COUNT II

### FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

32. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

33. Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defendants' Counterfeit Products by Plaintiff.

34. By using Plaintiff's Mark in connection with the sale of Counterfeit Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Products.

35. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

36. Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its brand.

## COUNT III

### VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT (815 ILCS § 510, et seq.)

37. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

38. Defendants have has engaged in acts violating Illinois law including, but not limited to, passing off their Counterfeit Products as those of Plaintiff, causing a likelihood of confusion and/or misunderstanding as to the source of their goods, causing a likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association with genuine Plaintiff's Mark products, representing that their products have Plaintiff's approval when they do not, and engaging in other conduct which creates a likelihood of confusion or misunderstanding among the public.

39. The foregoing Defendants' acts constitute a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510, et seq.

40. Plaintiff has no adequate remedy at law, and Defendants' conduct has caused Plaintiff to suffer damage to its reputation and goodwill. Unless enjoined by the Court, Plaintiff will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

## JURY DEMAND

Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1. That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:
   a. using Plaintiff's Mark or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing,

  advertising, offering for sale, or sale of any product that is not a genuine Plaintiff's Mark product or is not authorized by Plaintiff to be sold in connection with Plaintiff's Mark;

b. passing off, inducing, or enabling others to sell or pass off any product as a genuine Plaintiff's Mark product or any other product produced by Plaintiff that is not Plaintiff's or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under Plaintiff's Mark;

c. committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Products are those sold under the authorization, control or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

d. further infringing Plaintiff's Mark and damaging Plaintiff's goodwill;

e. manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear Plaintiff's Mark, or any reproductions, counterfeit copies, or colorable imitations thereof; and

f. using, linking to, transferring, selling, exercising control over, or otherwise owning the Online Marketplace Accounts or websites, or any other online marketplace account or website that is being used to sell or is the means by which Defendants could continue to sell Counterfeit Products;

2. That Defendants, within fourteen (14) days after service of judgment with notice of entry thereof upon them, be required to file with the Court and serve upon Plaintiff a written report under oath setting forth in detail the manner and form in which Defendants have complied with paragraph 1, a through f, above;

3. Entry of an Order that, upon Plaintiff's choosing, the registrant of the Domain Names shall be changed from the current registrant to Plaintiff, and that the domain name registries for the Domain Names, including, but not limited to, VeriSign, Inc., Registry Services, LLC, Afilias Limited, CentralNic, Nominet, and the Public Interest Registry, shall unlock and change the registrar of record for the Domain Names to a registrar of Plaintiff's selection, and that the domain name registrars, including, but not limited to, GoDaddy Operating Company, LLC ("GoDaddy"), Name.com, PDR LTD. d/b/a PublicDomainRegistry.com ("PDR"), and Namecheap Inc. ("Namecheap"), shall take any steps necessary to transfer the Domain Names to a registrar account of Plaintiff's selection; or that the same domain name registries shall disable the Domain Names and make them inactive and untransferable;

4. Entry of an Order that, upon Plaintiff's request, those with notice of the injunction, including, without limitation, any online marketplace platforms such as eBay, AliExpress, Alibaba, Amazon, Wish.com, Walmart, Etsy, Temu, and DHgate (collectively, the "Third Party Providers") shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using Plaintiff's Mark;

5. That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for

infringement of Plaintiff's Mark be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

6. In the alternative, that Plaintiff be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of Plaintiff's Mark;

7. That Plaintiff be awarded its reasonable attorneys' fees and costs; and

8. Award any and all other relief that this Court deems just and proper.

DATED: February 19, 2024

Respectfully submitted,

/s/ Ge (Linda) Lei
Ge (Linda) Lei
203 N. LaSalle St., Suite 2100
Chicago, IL 60601
Attorney No. 6313341
Linda.lei@getechlaw.com
312-888-6633

*ATTORNEY FOR PLAINTIFF*